HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANIEL P. SPEICHER and BILLIE SPEICHER, both individually and as husband and wife<br><br>Plaintiffs,<br><br>v.<br><br>UNION PACIFIC RAILROAD, a Delaware company; and TACOMA MOVING & STORAGE CO. A Washington corporation d/b/a TACOMA MOTORFREIGHT SERVICE/ TMS/ TMS MOTORFREIGHT SERVICE, Washington entities; THE CITY OF TACOMA, a Washington Municipal Corporation; GRENLEY STEWART RESOURCES, an entity; ROBERT W. GRENLEY, an individual,<br><br>Defendants. | Case No. 07-5524 RBL<br><br>ORDER DENYING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT |

THIS MATTER is before the Court on Defendant Tacoma Motorfreight Service's Motion for Summary Judgment and Defendant City of Tacoma's Motion for Summary Judgment. For the reasons stated below, Defendants' Motions for summary judgment are DENIED. Defendant Tacoma Motorfreight Service's motion to strike Union Pacific Railroad's supplemental brief is DENIED AS MOOT.

**I. BACKGROUND**

In the early morning hours of July 11, 2007, Jeffrey Townsend drove a Navistar International semi-trailer with a 42-foot flatbed trailer westbound on East River Street in Tacoma, Washington. At approximately 5:30 am, Jeffrey approached the River Street Crossing. According to his deposition, Townsend brought the

ORDER
Page - 1

truck to "almost a dead stop" about 10 to 15 feet in front of the first of two parallel railroad lines at the crossing. [Townsend Tr. 54:3-13]. Townsend also testified that he had to get "as close to the rail as possible to see around [the blackberry bushes]" in order to obtain an unobstructed view of the train tracks. [*Id.* at 55:14-25; 56:1-23]. Mr. Townsend then looked both ways, determined that railcars on the tracks to his right were stationary, and proceeded through the crossing slowly. [*Id.* at 16:24-25; 17:1-6]. Townsend drove the truck through the crossing at a slow rate of speed in order to protect his load from the rough condition of the crossing. *Id.* While crossing, Townsend looked through the back window to see if the "load was riding well" in his trailer. [*Id.* at 16:17-23]. Townsend observed a train engine approaching the tracks from his right side and attempted to move his trailer through the crossing and clear of the railroad tracks.[*Id.* at 17:4-8]. Townsend was unable to move through the crossing in time, and the train engine collided with the trailer of the truck. *Id.*

Plaintiff Daniel Speicher was "point" on the front end of the locomotive that crashed into the semi-truck driven by Jeffrey Townsend. Co-worker Rex Allen was controlling the movement of the train from the other end of the engine while Speicher stood atop the platform facing the railroad crossing. Speicher testified at his deposition that he saw the truck "slow down to a crawl," and at the time the Union Pacific engine started to move, he witnessed the truck slowly advance through the crossing. [Speicher Tr. 130:1-25; 131:1-15]. Plaintiff Speicher also testified at his deposition that as the train began to move forward towards the crossing, he "keyed [his] mic and said, '[h]ey, that will do'" to Rex Allen because he was concerned about the truck at the crossing. [*Id.* at 133:15-23]. Rex Allen, who initiated the locomotive's movement, testified that he did not hear Speicher the first time, but heard him saying something similar a second time. [Allen Tr. 166:9-25; 167:1-8]. Allen also testified that he heard Speicher say "stop," accidently flipped the speed of the train into high instead of low, and then put it into stop. [*Id.* at 187:3-25]. According to the Declaration of John Hunter, submitted by Defendant Tacoma Motorfreight Service in support of its summary judgment motion, the Union Pacific train was equipped with a recording device that documented the movement of the train. [Dkt. #45 Decl. of John Hunter, Ex. A at 5]. This device showed that the engine began to move at 5:34:53 a.m., achieved a speed of 12.8 mph, and struck the truck at 5:35:09 a.m.

Plaintiff, who was injured in the collision, filed this suit against Union Pacific Railroad, Tacoma Motorfreight Service, the City of Tacoma, Grenley Stewart Resources, and Robert Grenley. [Dkt. #9].

Defendants City of Tacoma and Tacoma Motorfreight Service (TMS) now request that Plaintiff's complaint be dismissed as to the claims against them. [Dkt. #35, #39]. Defendant Tacoma Motorfreight Service also argues that it is not liable to Union Pacific for contribution. Non-moving parties Plaintiff and Union Pacific Railroad oppose Defendants' motions for summary judgment.

## II. AUTHORITY

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party is entitled to summary judgment if, after satisfying its initial burden, the non-moving party fails to present specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable finder of fact could return a decision in the nonmoving party's favor. *Triton Energy*, 68 F.3d at 1220.

## III. DISCUSSION

**A.  Defendant City of Tacoma's Motion for Summary Judgment**

The City of Tacoma requests summary judgment on the basis that there is no issue of material fact as to whether the City breached a duty to Plaintiff to (1) provide adequate warning of the railroad crossing with striping, a stop sign, or a stop bar; (2) maintain the grade crossing; and (3) remove blackberry bushes to improve visibility at the crossing. [Dkt. # 35]. Additionally, the City argues that a failure to provide any of the three remedies was not the proximate cause of the accident. The City concludes that the train wreck would have occurred regardless of whether the City improved the crossing because Townsend had driven over the crossing before and was aware of its condition. The City also contends that Townsend would have proceeded through the intersection even if he had come to a complete stop because the train was not moving at the time he approached the crossing. Plaintiffs allegations survive summary judgment because there is a material issue of fact as to whether or not the city had a duty to engage in these preventative measures, as well as whether or not the failure to do so was the proximate cause of the collision and the Plaintiff's injuries.

In *Keller v. City of Spokane*, 146 Wn.2d 237, 44 P.3d 845 (2002), the Washington State Supreme Court held that "a municipality owes a duty to all persons, whether negligent or fault-free, to build and maintain its roadways in a condition that is reasonably safe for ordinary travel. *Id.* at 249. If the roadway is inherently dangerous or misleading, the jury is to determine the question of whether or not the City failed to provide adequate warning in order to satisfy its duty to provide reasonably safe roads. *Owen v. Burlington Northern & Santa Fe Railroad Co.*, 153 Wn.2d 780, 789-90, 108 P.3d 1220 (2005). In this case, there is a material issue of fact as to both whether the roadway is inherently dangerous or misleading, and whether the City has taken appropriate corrective action. Facts presented by both parties indicate that the roadway was in poor condition, requiring Townsend to drive through the crossing at a very slow speed. [*See*, *e.g.,* Townsend Tr. 16:24-25; 17:1-6 (testifying in his deposition that he crossed the tracks at a slow rate of speed in order to protect his load from the rough condition of the crossing)]. The Court believes that a reasonable juror could conclude that the roadway near the crossing was "inherently dangerous," and that more corrective measures were needed to make the road reasonably safe.

The City argues that even if it had implemented corrective measures that would require, or make it more likely for Townsend to come to a complete stop, a failure to implement these corrective measures was not a proximate cause of the train collision because at the time Townsend approached the crossing, the train had not begun to move. The Court rejects the City's argument. A reasonable juror could conclude that if corrective actions, such as adding a stop sign, were taken by the City, Townsend would have come to a complete stop. Furthermore, a reasonable juror could also conclude that if Townsend had come to a complete stop, he would have noticed that the train, was in fact moving.[1]

Additionally, the City argues that it had no duty to maintain the grade crossing because that duty is imposed on Union Pacific by RCW 81.53.090. That statute states that at "crossings involving more than one track, maintenance by the railroad company shall include that portion of the crossing between and for one foot on the outside of each outside rail." *Id.* The City's argument fails because a reasonable juror could conclude

---

[1] Whether or not the train had begun to move when the truck approached the crossing is in dispute–and is a factual issue for the jury to decide. At the time the Union Pacific engine started to move, Speicher testified that he witnessed the truck slowly advance through the crossing. [Speicher Tr.131: 1-15]. [*See also* Decl. of Hunter, Exhibit A].

ORDER
Page - 4

from the evidence presented that the roadway was not reasonably safe one foot outside of the outside rail,[2] and that the condition of the crossing beyond the one foot length was a proximate cause of the train collision because it required Townsend to slow down while crossing, and prevented him from moving through more quickly in order to avoid the oncoming train.

Lastly, the City argues that, as a matter of law, it had no duty to remove or maintain the blackberry bushes. The City misconstrues the holding of *Rathburn v. Stevens County*, 46. Wn.2d 352, 282 P.2d 853 (1955), as well as the other cases it cites for the proposition that "governmental entities have no duty to remove vegetation along the side of the roadway." [Dkt. #51]. The Court in *Rathburn* held that *where a road itself is reasonably safe for public travel*, it is not rendered inherently dangerous solely for the failure to remove vegetation which tends to obstruct the view. *Id.* at 356. *Rathburn*'s holding does not apply to this case because there is an issue of material fact as to whether or not the road was inherently dangerous without consideration of the blackberry bushes. Given the holding in *Rathburn*, there is no reason that the exception that a "municipality *may* be chargeable with negligence for failure to maintain warning signs or barriers *if the situation along the highway is inherently dangerous . . .* ," should not apply equally to outside vegetation as it does warning signs or barriers. *Barton v. King County*, 18 Wn.2d 573, 576 (1943). The Court in *Bradshaw v. City ov Seattle*, 43 Wn.2d 766, 264 P.2d 265 (1953) similarly relied on the fact that "there was no inherent danger in the street itself," when it held that the presence of uncut vegetation did not create any liability against the city. *Id.* at 775 (stating that "we are of the opinion that the intersection . . . was not inherently dangerous or of such a character as to mislead a traveler exercising reasonable care."). Thus, because there is an issue of fact as to whether or not the street was inherently dangerous, there is also a material issue of fact as to whether the City had a duty to trim the blackberry bushes.

Similarly, whether the City's failure to cut the blackberry bushes was a proximate cause of the collision is also a factual issue for the jury to decide. Viewing the evidence in the light most favorable to the nonmoving party, a reasonable juror could find that Townsend's view of the train was obstructed by the blackberry bushes, and that he would have viewed the train engine moving prior to advancing across the railroad if the blackberry bushes were maintained or cut. Thus, the issue of whether the City's failure to maintain the crossing was proximate cause of the train collision may not be determined as a matter of law.

---

[2] *See* [Townsend Tr. 199: 12-25; 200-201 (testifying potholes extended three to four feet from the rail)]; *see also* Decl. of Evans, Exhibit 1, p. 13-17 (photographs depicting crossing).

ORDER
Page - 5

There is a material issue of fact as to whether or not the City was negligent in its failure to (1) provide additional protective measures such as a stop sign, striping, or a stop bar; (2) maintain the road outside of one foot beyond the outside rail; and (3) cutting down the blackberry bushes. Additionally, there is an issue of fact as to whether or not such failures were the proximate cause of the train collision. Defendant City of Tacoma's Motion for Summary Judgment is therefore DENIED.

## B. Defendant Tacoma Motorfreight Service's Motion for Summary Judgment

Defendant Tacoma Motorfreight Service (TMS) similarly moves for summary judgment, arguing that TMS did not breach a duty owed to any party, and was not a proximate cause of the accident. [Dkt. #39]. Tacoma Motorfreight argues that because "plaintiffs and Union Pacific cannot show that the TMS driver was obligated to wait at the grade crossing indefinitely until the locomotives had moved away, there is no basis for the negligence claim against TMS." *Id.* Plaintiff and Defendant Union Pacific contend that a reasonable juror could find (1) that Townsend was negligent by failing to come to a complete stop in violation of RCW 46.61.340(1) and/or 49 C.F.R. § 392.11; and (2) that such negligence was the proximate cause of the train collision.

In response to Plaintiff and Defendant Union Pacific, Defendant TMS argues that the statutory law cited by Plaintiff does not impose a duty on the Defendant to come to a complete stop, and that in the absence of a such a duty, TMS is not negligent as a matter of law. [Dkt. #62]. Defendant states that the "non-moving parties utterly fail to show that, when faced with a stationary locomotive, any user of a public roadway is precluded from entering a grade crossing near the locomotive." Defendant TMS's argument fundamentally fails. First, the question of whether or not the locomotive was stationary when Townsend looked to the right at the crossing is in dispute. Second, the question of whether Townsend drove over the rail crossing before "due caution [was] taken to ascertain that the course is clear" in violation of 49 C.F.R. 392.11, is a question of fact for the jury to decide. A reasonable juror could conclude, from the facts of this case, that Townsend should have come to a complete stop, and his failure to do so was a failure to exercise "due caution." Similarly, the Defendant TMS argues that RCW 46.61.340(1) only required Townsend to stop when an "approaching railroad train is plainly visible and is in hazardous proximity to such crossing," and that the engine at issue in this case was stationary when Townsend approached the crossing. As explained before, whether the engine was moving when Townsend approached the crossing is disputed by the parties in this case. Similarly, whether the engine was plainly visible and in a hazardous proximity to the crossing is also a factual issue for which a

ORDER
Page - 6

reasonable juror may find in favor of the nonmoving parties. Thus, whether TMS violated RCW 46.61.340(1) and 49 C.F.R. 392.11 by failing to stop is a question for the jury to decide.

Moreover, even if reasonable jurors could only conclude that the Defendant did not violate the statutes, breach of a duty created by a statute, ordinance, or administrative rule is only evidence of negligence, and it is not negligence *per se*. RCW 5.40.050. Contrary to Defendant TMS's argument, Defendant may be negligent without violating a particular statute. Thus, the question of whether the Defendant TMS was negligent would still survive summary judgment even if the Court were to incorrectly rule that Townsend did not violate either statute as a matter of law. Evidence, which includes Townsend's deposition, has been provided by both parties, and allows a reasonable juror to find that Defendant TMS crossed the railroad in a negligent manner. A reasonable juror could also find that Townsend's actions were the proximate cause of the collision, and that had Townsend exercised reasonable care, he would not have crossed the tracks and the train would not have collided with his trailer. There is a material issue of fact as to whether or not Townsend was negligent in crossing the railroad tracks, and whether or not such negligence was the proximate cause of the train collision. Defendant TMS's Motion for Summary Judgment is therefore DENIED.

## IV. CONCLUSION

The issue of fault in this cause is a thorny one. Both Defendant Tacoma Motorfreight Service and Defendant City of Tacoma request that this Court rule on a number of inherently factual issues as a matter of law. For the foregoing reasons, a jury must decide the issues of whether or not the City adequately maintained the crossing, and whether or not Defendant TMS was negligent in crossing the train tracks. Defendants' Motions for Summary Judgment are therefore DENIED. The Court DENIES Defendants' summary judgment motions without relying on Union Pacific Railroad's supplemental brief. Defendant Tacoma Motorfreight Service's motion to strike Union Pacific Railroad's supplemental brief is therefore DENIED AS MOOT.

IT IS SO ORDERED.

Dated this 31st day of October, 2008.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE